**Don Wilburn COLLINS, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 09–15–00089–CR**

Court of Appeals of Texas, Beaumont.

Submitted on February 12, 2016

Opinion Delivered March 29, 2017

508

Jerald D. Crow, Conroe, TX, for Appellant.

Brett W. Ligon, District Attorney, Marc Brumberger, Assistant District Attorney, Conroe, TX, for Appellee.

Before Kreger, Horton, and Johnson, JJ.

## OPINION

HOLLIS HORTON, Justice

This case concerns whether an ex post facto violation of the defendant's constitutional rights occurred due to the transfer of the defendant's case from the juvenile court system to a district court where the defendant was tried as an adult. The appellant argues that an ex post facto violation occurred because he was tried as an adult for a crime he committed in 1998, when he was a thirteen-year-old child. At that time, Texas law required the proceedings against children fourteen or younger to be handled exclusively in juvenile courts.[1] However, after 1998, the Legislature amended the laws that apply to the transfer of juvenile proceedings to district court, expanding the attained age requirements for such transfers in cases involving children accused of committing murder.

Act of May 27, 1999, 76th Leg., R.S., ch. 1477, § 8, 1999 Tex. Gen. Laws 5067, 5068–69 (current version at Tex. Fam. Code Ann. § 54.02(j) (West 2014)). The juvenile court in the defendant's case transferred the defendant's case from juvenile court based on the 1999 amendments, which lowered the age requirements to include thirteen year olds. The defendant appealed, complaining the juvenile court erred by relying on the amendments the Legislature passed after the date he committed the acts that resulted in the State charging him with murder.

On appeal, Don Wilburn Collins argues that an ex post facto violation of his rights occurred when the juvenile court relied on the amended juvenile transfer provision in the Juvenile Justice Code to transfer his case to a district court. See U.S. CONST. art. I, § 10, cl. 1 ("No State shall ... pass any ... ex post facto Law"); Tex. Const. art. I, § 16 ("No ... ex post facto law ... shall be made"); Tex. Fam. Code Ann. § 54.02(j) (West 2014) (authorizing a juvenile court to waive its jurisdiction over juveniles who have attained a certain age depending on the classification of the crime and to transfer the case from juvenile court to a district court for criminal proceedings). Collins also argues that the evidence admitted during the hearing conducted by the judge of the juvenile court on the State's motion to transfer was insufficient to support the court's decision to grant the State's motion and to transfer his case to a district court where he was tried for capital murder. See Tex. Fam. Code Ann. § 54.02(j) (setting out the factors the State must prove before the judge

1. Compare the provisions of the Juvenile Justice Code's discretionary transfer statute, as they existed in 1998, with the provisions that existed after the Legislature amended the statute in 1999. Compare Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 34, 1995 Tex. Gen. Laws 2517, 2533–34, with Act of May 27, 1999, 76th Leg., R.S., ch. 1477, § 8, 1999 Tex. Gen. Laws 5067, 5068–69 (current version at Tex. Fam. Code Ann. § 54.02(j)(2), (j)(4) (West 2014)).

of a juvenile court is authorized to order that a juvenile proceeding be transferred to a district court).[2]

For the reasons discussed in the opinion, we hold that the transfer of Collins' case from juvenile court to district court did not result in an ex post facto violation of Collins' constitutional rights. We further hold that, given the evidence introduced in the motion to transfer hearing, the judge of the juvenile court did not abuse her discretion by granting the motion to transfer. We overrule Collins' issues, and we affirm the trial court's judgment.

## Background

In June 1998, Robert Middleton, an eight-year-old child, was in the woods near his home when someone doused him with gasoline and set him on fire. Middleton suffered third-degree burns over 95% of his body. In late April 2011, Middleton died of skin cancer. Dr. David Herndon, the doctor who treated Middleton's burns, explained that Middleton developed skin cancer due to complications from the burn injuries Middleton suffered in 1998.

Middleton was hospitalized for an extended period that began on the day he was burned. Several weeks after Middleton was admitted to the hospital, and while Middleton was under the effects of narcotic drugs for pain, Middleton's mother claimed that Middleton told her that "Don" was the person who burned him. Based on that information, Bruce Zenor, a detective with the Montgomery County Sheriff's Department, filed an affidavit asking that the judge of the juvenile court authorize law enforcement officials to take Collins, a thirteen-year-old child who lived in Middleton's neighborhood, into custody. Later that same day, a juvenile court judge signed an order authorizing the police to take Collins into custody. After Collins was detained, he was placed in a juvenile detention facility.

Approximately three weeks after Collins became a suspect in Middleton's case, William Pattillo III, an assistant county attorney for Montgomery County in charge of juvenile cases, filed a petition in juvenile court alleging that on June 28, 1998, Collins engaged in delinquent conduct by assaulting Robert Middleton, a child, by splashing Middleton with an accelerant and then lighting it with an incendiary device. *See* Tex. Penal Code Ann. § 22.02 (West 2011) (aggravated assault), § 22.04 (West Supp. 2016) (injury to a child).[3] In July 1998, the judge presiding over the juvenile court found that probable cause existed to believe that Collins had engaged in delinquent conduct.

2. The factors that section 54.02(j)(4)(B) required the State to establish to prove that a juvenile proceeding should be transferred did not change between the date Collins committed the crime for which he was tried and the date the judge of the juvenile court granted the State's motion to transfer the proceeding from juvenile court to an appropriate district court. *Compare* Tex. Fam. Code Ann. 54.02(j)(4)(B), *with* Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 34, 1995 Tex. Gen. Laws 2517, 2533–34. Therefore, for convenience, we cite the current version of section 54.02(j)(4)(B), the discretionary transfer statute.

3. Although the Legislature amended the aggravated assault and the injury to a child sections of the Penal Code after Collins was charged with assaulting Middleton, there are not any changes to these sections relevant to the issues that Collins raises in his appeal. *Compare* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, secs. 22.02, 22.04(a), 1993 Tex. Gen. Laws 3586, 3619–20, 3622–23, *with* current versions of these sections of the Penal Code that may be found at Tex. Penal Code Ann. § 22.02 (West 2011) (aggravated assault), § 22.04 (West Supp. 2016) (injury to a child). For convenience, we cite the current versions of these statutes.

In January 1999, the judge presiding over the juvenile court released Collins from juvenile detention. Upon his release, the juvenile court placed Collins under the supervision of his uncle, John Horn. In July 2000, Pattillo filed a motion to nonsuit the petition charging Collins with delinquent conduct. The motion recites that the County[4] no longer desires to pursue the case. In the motion, Pattillo asked that the juvenile court dismiss the case "without prejudice to the rights of [Montgomery County] to refile[.]" The judge presiding over the juvenile court granted the request, and the order provides that the dismissal was "without prejudice to the rights of [Montgomery County] to reassert its claim or reinstate its action against [Collins]."

In late April 2011, Middleton died; his death certificate indicates that he developed skin cancer as a consequence of the burn injuries that he suffered in 1998. In May 2011, Montgomery County's cold case unit opened a second investigation into Middleton's case. In September 2012, when Collins was twenty-seven, Montgomery County filed a petition against Collins in juvenile court charging him with murder. In the petition, the County asked that the judge of the juvenile court transfer the petition charging Collins with murder to a district court, where Collins could be tried as an adult.[5] Montgomery County's 2012 motion to transfer alleged that probable cause existed to believe that Collins was guilty of murdering Middleton by exposing him to fire. *See* Tex. Fam. Code Ann. § 54.02(j)(2)(A) (providing for discretionary transfers to criminal court in cases that involve children who were, at the time they committed the acts resulting in another's death, at least ten but under seventeen years of age).[6] In October 2012, based on the County's motion to dismiss its 2012 petition for discretionary transfer, the judge presiding over the juvenile court dismissed the petition.

In September 2013, the County filed another petition alleging that Collins murdered Middleton. In its 2013 petition, the County once again asked the judge of the juvenile court to transfer the proceedings against Collins to a district court. In March 2014, the judge of the juvenile court conducted a hearing on the County's mo-

---

**4.** Throughout the opinion, because these pleadings filed in juvenile court were filed by attorneys who were employed by the Montgomery County Attorney's office, we refer to the County when referring to the State's pleadings that are relevant to the proceedings discussed that were filed in that court. After the case was transferred, the Montgomery County District Attorney's office handled of the case; consequently, we refer to the pleadings filed by the attorneys who were employed by the District Attorney as pleadings that were filed by the State.

**5.** The petition charging Collins with murder was required to be filed in juvenile court because Collins was a child when he committed the acts that led to Middleton's death. *See* Tex. Fam. Code Ann. § 51.04(a) (West Supp. 2016). Under Texas Law, juvenile courts have exclusive original jurisdiction over felony cases that involve juveniles who are, when the criminal acts occurred, at least ten years old but not yet seventeen. *See Moon v. State,* 451 S.W.3d 28, 37 (Tex. Crim. App. 2014) (explaining that the provisions of the Juvenile Justice Code vest original jurisdiction over felonies in a court designated by each county as its juvenile court).

**6.** Although section 54.02(j)(2)(A) of the Family Code was amended after the date Collins allegedly injured Middleton, the Legislature provided that amendments to the discretionary transfer provision under the statute were to be applied to discretionary transfer petitions filed after the amendments went into effect. Act of May 27, 1999, 76th Leg., R.S., ch. 1477, §§ 39(d), 41, 1999 Tex. Gen. Laws 5067, 5090 (effective September 1, 1999); *compare* 1999 Tex. Gen. Laws at 5069 (revising section 54.02(j)), *with* current version at Tex. Fam. Code Ann. § 54.02(j)(2).

tion to transfer. Twenty-seven witnesses testified during the hearing, and the testimony the juvenile court considered in the hearing addresses whether the County had exercised due diligence in the manner it handled Collins' case before Collins turned eighteen. The evidence also addressed whether the County could have reasonably proceeded with a case against Collins for his role in causing Middleton's injuries before Collins turned eighteen. At the conclusion of the hearing, the judge of the juvenile court waived its right to exercise jurisdiction over Collins' case, found that the County had exercised due diligence in investigating Middleton's case before Collins turned eighteen, found that the County did not develop probable cause to allow it to proceed against Collins before he turned eighteen, found that it was not practicable for the County to have proceeded against Collins before he turned eighteen, and found that the State discovered new evidence in Middleton's case after Collins turned eighteen. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 34(j), 1995 Tex. Gen. Laws 2517, 2534 (current version at Tex. Fam. Code Ann. § 54.02(j)).

In May 2014, the State secured an indictment from a grand jury charging Collins with capital murder. The indictment alleges that Collins injured Middleton in 1998 in the course of committing the offense of kidnapping, obstruction, or retaliation, and that the injuries Collins inflicted on Middleton resulted in Middleton's death. *See* Tex. Penal Code Ann. § 19.03(a)(2) (West Supp. 2016).[7] At the conclusion of the guilt-innocence phase of Collins' trial, the jury found Collins guilty of capital murder. In the punishment phase of the trial, the trial court instructed the jury that "the punishment for Capital Murder in this case is confinement in the Institutional Division of the Texas Department of Criminal Justice for any term not to exceed forty (40) years."[8] At the conclusion of the punishment phase of Collins' trial, the jury determined that Collins should serve a forty-year sentence. Subsequently, the judge sentenced Collins to a forty-year sentence.

### Ex Post Facto Challenge

Under the current Juvenile Justice Code, the discretionary transfer statute allows a juvenile court judge to transfer a case involving a juvenile to a district court if the defendant is eighteen years of age or older at the time of the hearing, and if he was ten years of age or older when he committed a crime defined as a capital felony or as murder. Tex. Fam. Code Ann. § 54.02(j). However, when Collins injured

---

7. Although the capital murder statute was amended several times after the date Collins committed the alleged offense, none of the amendments to section 19.03(a)(2) of the Penal Code are relevant to our analysis of the issues that Collins has raised in his appeal. *Compare* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 19.03(a)(2), 1993 Tex. Gen. Laws 3586, 3613 (amended 2003, 2005, 2011), *with* current version at Tex. Penal Code Ann. § 19.03(a)(2) (West Supp. 2016). For convenience, we cite the current version. Additionally, we note that the State re-indicted Collins in January 2015, but the amended indictment is not relevant to the issues that Collins raises in his appeal.

8. We note that a sentence not to exceed forty years' imprisonment is the sentence that the Legislature authorized for capital felonies when the matter is handled entirely as a juvenile proceeding; i.e., when the case is not transferred to a district court. *See* Tex. Fam. Code Ann. § 54.04(d)(3)(A)(i) (West Supp. 2016). However, under the Penal Code, individuals younger than eighteen at the time of the offense who are convicted in a district court of committing a capital felony are subject to a mandatory life sentence. *See* Tex. Penal Code Ann. § 12.31(b)(1) (West Supp. 2016).

Middleton in June 1998, the Juvenile Justice Code required that a child be fourteen or older at the time the crime was committed before the juvenile court could transfer a case based on conduct classified as a capital felony or as murder to district court. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 34, 1995 Tex. Gen. Laws 2517, 2533–34 (amended 1999, 2009, 2011, 2013) (current version at Tex. Fam. Code Ann. § 54.02(j)).

Collins was thirteen when he poured gasoline on Middleton and set him on fire. Middleton lived approximately thirteen years after Collins caused Middleton's burns. Collins was never tried for delinquent conduct before he turned eighteen for his conduct. The parties do not dispute that under the laws as they existed in 1998, the Juvenile Justice Code did not authorize a juvenile court judge to transfer cases involving individuals who, at the time the juvenile injured his victim, were younger than fourteen. *See* 1995 Tex. Gen. Laws at 2534.

In his first issue, Collins contends that the juvenile court's decision to rely on the amended version of the discretionary transfer statute to transfer his case to district court violated the ex post facto prohibitions in the Texas and the United States constitutions, which prohibit legislatures from enacting retroactive laws. *See* U.S. CONST. art. I, § 10, cl.1 ("No State shall … pass any … ex post facto Law"); Tex. Const. art. I, § 16 ("No … *ex post facto* law … shall be made"). In response, the State contends that the Legislature expressly made the amendments to the discretionary transfer statute apply to any motion seeking a transfer if the motion was filed after September 1, 1999. According to the State, no ex post facto violation occurred because Collins received a forty-year sentence, which according to the State is a sentence that is substantially equivalent to the one Collins would have received had his case been handled entirely in a juvenile court.

First, we must determine whether the amended version of the discretionary transfer statute applies to the motion for discretionary transfer the County filed in Collins' case in 2013. If so, we must then determine whether by allowing the transfer, Collins received a punishment more onerous than the one he would have received in a juvenile court such that the transfer resulted in a violation of his constitutional rights against the Legislature passing a retroactive law.

■ Deciding whether the juvenile court properly applied the amended version of the discretionary transfer statute to Collins' case is a straightforward matter. When the Legislature amended the discretionary transfer statute, it provided that "[t]he change in law made [to the discretionary transfer sections in the statute] applies to discretionary transfer proceedings in which the discretionary transfer petition or motion was filed on [or] after the effective date of this Act." *See* Act of May 27, 1999, 76th Leg., R.S., ch. 1477, § 39(d), 1999 Tex. Gen. Laws 5067, 5090 (amended 2009, 2011, 2013) (current version at Tex. Fam. Code Ann. § 54.02(j)). The County filed the motion that resulted in the transfer of Collins' case on September 16, 2013. Given the enabling language in the amended discretionary transfer statute, we hold the judge of the juvenile court who presided over Collins' case was authorized to apply the amended version of the discretionary transfer statute to the County's motion for discretionary transfer. To the extent Collins argues that the juvenile court was not authorized by the Legislature to transfer his case to district court, his argument is overruled.

■ Next, we turn to the issue of whether, by amending the discretionary

transfer statute, the Legislature violated the constitutional prohibitions against enacting ex post facto laws. Generally, the Constitution prohibits statutes from being applied retroactively in a way that changes the punishment that applied to a crime on the date the crime was committed. *See Rodriguez v. State*, 93 S.W.3d 60, 66 (Tex. Crim. App. 2002) ("An ex post facto law ... changes the punishment and inflicts a greater punishment than the law attached to a criminal offense when committed."). Nevertheless, whether the Legislature's decision to amend a statute causes a sufficient change to increase a defendant's punishment in a manner that violated the Constitution "is a matter of degree[,]" and "[a] statutory amendment that creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment does not violate the Ex Post Facto Clause." *Johnson v. State*, 930 S.W.2d 589, 591, 593 (Tex. Crim. App. 1996) (concluding that statute passed after defendant committed a crime, which permitted an out-of-state sentence to be used in cumulating the defendant's sentence, operated retroactively as a criminal punishment, violating article I, section 10 of the U.S. Constitution).

According to Collins, by transferring his case to a district court, the juvenile court increased his potential punishment by ex-

posing him to a life sentence, should he be convicted. *See* Tex. Penal Code Ann. § 12.31(a) (West Supp. 2016).[9] In arguing that the amendment to the discretionary transfer statute made the Juvenile Justice Code more punitive by allowing his case to be transferred to a district court, Collins compares the mandatory life sentence faced by a juvenile convicted of a capital felony in a district court with the forty-year determinate sentence that applied to juveniles found to have committed the same type of conduct he was convicted of having committed but whose cases were handled entirely within the juvenile justice system.[10] *See* Act of June 2, 1997, 75th Leg., R.S., ch. 1086, § 11, 1997 Tex. Gen. Laws 4179, 4185 (amended 1999, 2001, 2003, 2007, 2009, 2011, 2013, 2015) (current version at Tex. Fam. Code Ann. § 54.04(d)(3) (West Supp. 2016)). Collins contends that a mandatory life sentence, the sentence that applies to juveniles convicted in district court of committing capital murder, is the only sentence the Legislature authorized for juveniles convicted in a district court of committing a capital murder. Nonetheless, the district court did not impose a mandatory life sentence on Collins; instead, by instructing the jury that it could sentence Collins to no more than forty years in prison, the court effec-

9. Although the section describing the punishment for capital felonies was amended after 1998, the changes enacted after 1998 are not relevant to our analysis of the issues that Collins raises in his appeal. *Compare* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3602, *with* current version at Tex. Penal Code Ann. § 12.31 (West Supp. 2016). For convenience, we cite the current version.

10. We use the term "determinate sentence" in the context of proceedings involving children accused of capital murder whose cases are adjudicated in juvenile court that result in findings indicating the child committed delinquent conduct. *See* Tex. Fam. Code Ann.

§ 53.045 (West Supp. 2016) (Offenses Eligible for Determinate Sentence); *see also* Tex. Fam. Code Ann. § 54.04011(c)(2) (West 2014) (addressing post-adjudication commitments to secure correctional facilities in cases involving children who commit crimes including capital murder). In a case involving conduct like the conduct at issue here, the child is exposed to a sentence of no more than forty years, some portions of which are likely served in a facility operated by the Juvenile Justice Department with the possibility that the juvenile may, upon reaching an appropriate age, be transferred to a facility operated by the Department of Criminal Justice. *See id.*

tively limited Collins' sentence to a term of no more than forty years. *See* Tex. Penal Code Ann. § 12.31(a)(1) (providing for mandatory life sentence in cases of capital felonies committed by individuals not yet eighteen).[11] However, Collins now argues that the trial court was not authorized to impose a punishment that differs from that proscribed in section 12.31(a)(1) of the Penal Code, which applies to juveniles convicted of committing capital murders. *Id.*

In response to these arguments, the State focuses on the sentence Collins received, and it disregards the sentence he might have received had the court given him a life sentence. According to the State, the discretionary transfer statute is merely a procedural change as the statute was applied in Collins' case given that he did not receive a life sentence. The State suggests Collins did not suffer an increased punishment, given that he received a sentence substantially equivalent to the sentence he was eligible to receive had his case been handled entirely within the juvenile system.[12] The State concludes the forty-year sentence that Collins received is substantially the same as the determinate sentence that Collins would have received had his case been tried entirely within the juvenile justice system. *See* Tex. Fam. Code Ann. § 53.045 (West Supp. 2016); § 54.04((d)(3)(A).

▇▇▇▇ Having described the parties' arguments, we turn to the merits of Collins' argument that an ex post facto violation occurred. Several factors guide a court in evaluating whether a statute operates retroactively in a way that is constitutionally prohibited. One factor courts consider is "'whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred, [and] it is irrelevant whether the statutory change touches any vested rights.'" *Grimes v. State*, 807 S.W.2d 582, 587 (Tex. Crim. App. 1991) (quoting *Weaver v. Graham*, 450 U.S. 24, 29 n.13, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). Courts also consider whether the change to the statute was procedural or substantive, indicating that "[l]aws altering procedure do not generally fall within the prohibition." *Ibarra v. State*, 11 S.W.3d 189, 192 (Tex. Crim. App. 1999). Other factors that can be considered in evaluating the retroactive effect of a statute include:

- "whether the sanction involves an affirmative disability or restraint;"
- "whether it has traditionally been regarded as a punishment;"
- "whether it comes into play only on a finding of scienter;"
- "whether its operation will promote the traditional aims of punishment—retribution and deterrence;"
- "whether the behavior to which it applies is already a crime;"
- "whether an alternative purpose to which it may rationally be connected is assignable to it;" and
- "whether it appears excessive in relation to the alternative purpose assigned."

*Rodriguez*, 93 S.W.3d at 68 (citing *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)). In his appeal, Collins does not complain that the discretionary transfer statute always operates in an unconstitutional manner; instead, his complaint is that the stat-

---

11. We note that Collins did not object to the instruction the district court gave the jury limiting his sentence to a term of no more than forty years.

12. *See* Act of May 27, 1999, 76th Leg., R.S., ch. 1477, § 41, 1999 Tex. Gen. Laws 5067, 5090 (indicating the Act went into effect on September 1, 1999).

ute operated unconstitutionally as it was applied to him. When a party makes an "as applied" challenge to a statute, the essence of the challenge asserts that the statute, although generally constitutional, operates unconstitutionally given the challenging party's particular circumstance. *See In re Commitment of Fisher*, 164 S.W.3d 637, 656 n.17 (Tex. 2005) (citing *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 461 n.5 (Tex. 1997)).

 We have located no cases challenging the amended discretionary transfer statute on the basis that it operates retroactively in a way the results in an ex post facto violation of the law. *See* Tex. Fam. Code Ann. § 54.02(j). However, the district court obviously recognized the potential for an ex post facto violation had it exposed Collins to a mandatory life sentence, given that he was not eligible for a penalty of that severity in 1998. Therefore, in determining if an ex post facto violation occurred, we must decide whether the district court was authorized to instruct the jury that Collins could be given a sentence of no more than forty years in evaluating whether the transfer of his case to district resulted in a constitutionally prohibited increase in his punishment. *See* Act of June 2, 1997, 75th Leg., R.S., ch. 1086, § 11, 1997 Tex. Gen. Laws 4179, 4185 (current version at Tex. Fam. Code Ann. § 54.04(d)(3)(A)(i–ii)).

In arguing that an ex post facto violation occurred, Collins limits his argument to the prospect that he faced a life sentence. For example, Collins points to no evidence and presents no argument that serving a sentence entirely in the custody of the Texas Department of Criminal Justice is more onerous than a sentence serviced partially in the custody of the Juvenile Justice Department and partially in the custody of the Texas Department of Criminal Justice. Additionally, he does not argue

that he was not eligible for a forty-year determinate sentence under the Juvenile Justice Code for the acts he committed in 1998, whether those acts are classified as either a first-degree or as a capital felony. *See* Act of June 2, 1997, 75th Leg., R.S., ch. 1086, § 11, 1997 Tex. Gen. Laws 4179, 4185 (current version at Tex. Fam. Code Ann. § 54.04(d)(3)(A)(i–ii)). Based on the arguments before us in the appeal, we conclude that following his trial in district court, Collins received a punishment of substantially the same length as the punishment he was eligible to receive under the laws that applied to him in 1998 had his case been tried entirely in the juvenile system. *See Rodriguez*, 93 S.W.3d at 79; *Grimes*, 807 S.W.2d at 587.

Collins premises his ex post facto arguments on the prospect that he faced a mandatory life sentence, but that was not the sentence that was applied to him following his trial. Collins suggests that because the statute proscribing a mandatory life sentence for juveniles convicted of capital murder indicates that is the sentence that "shall" be applied to juveniles in district courts who are convicted of committing capital felonies, the trial court was not authorized to apply any other sentence. *See* Tex. Penal Code Ann. § 12.31(a)(1). While Collins makes a strong argument, we disagree with Collins' argument that a forty-year sentence under the circumstances in Collins' case is a legislatively unauthorized sentence.

 Generally, "[a] statutory amendment that creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment does not violate the Ex Post Facto Clause." *Johnson*, 930 S.W.2d at 591. While section 12.31 of the Penal Code provides that juveniles convicted in district courts in cases involving capital crimes "shall be punished ... for

life[,]" the amended discretionary transfer statute does describe the penalty the Legislature intended that courts apply to the children whose cases were, for the first time, now subject being transferred based on the Legislature's decision to lower the age range of children whose cases could be transferred. Generally, courts are not permitted to presume that when the Legislature enacts or amends a law, the Legislature intended to create an ex post facto violation. *See* Tex. Gov't Code Ann. § 311.021(1) (West 2013) ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended[.]").

In this case, the district court properly recognized that the Legislature likely did not intend to create an ex post facto violation of law by subjecting some cases that were for the first time subject to being transferred to district court to punishments in district court that were longer than the punishment available in the case based on the date the child committed the crime. *Id.* By looking to the punishments that the Legislature authorized for thirteen-year-old children who committed first-degree or capital felonies in 1998, the district court harmonized the discretionary transfer statute in a manner that avoided any ex post facto violation by applying a legislatively authorized sentence of forty years to a crime that Collins committed in 1998 when he was a thirteen-year-old child. In our opinion, the district court properly looked to the punishments authorized for children who, in 1998, were younger than fourteen in determining the legislatively authorized sentence to apply in Collins' case. *See* Act of June 2, 1997, 75th Leg., R.S., ch. 1086, § 11, 1997 Tex. Gen. Laws 4179, 4185 (current version at Tex. Fam. Code Ann. § 54.04(d)(3)(A)(i–ii)).

The provisions the Legislature provided to aid courts in construing the Penal Code reinforce the view that the trial court was authorized to select a forty-year sentence under the circumstances in Collins' case. The Penal Code provides that its provisions are to be construed "according to the fair import of their terms, to promote justice and effect the objectives of the code." Tex. Penal Code Ann. § 1.05 (West 2011). While section 12.31(a)(1) of the Penal Code indicates that a court shall apply a mandatory life sentence to a juvenile convicted of a capital felony, the district court was not authorized to apply that punishment in Collins' case because doing so would result in an ex post facto violation of the law. *See* Tex. Penal Code Ann. 12.31(a)(1).

We are also not persuaded that the Legislature's decision to use the word "shall" in section 12.31(a)(1) indicates that the Legislature intended courts to apply a life sentence where such a sentence would violate the constitution. Generally, when the Legislature uses the word "shall" in a statute, it is understood that the Legislature intended to "impose a duty." Tex. Gov't Code Ann. § 311.016(2) (West 2013). Additionally, courts construing the word "shall" in statutes generally determine that the term was intended to create a mandatory duty. *See Crosstex Energy Servs. L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 392 (Tex. 2014). However, courts sometimes give the term "shall" a directory meaning, construing it so that it does not indicate the Legislature intended to create a mandatory duty. *See Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996). Construing "shall" as directory rather than mandatory is appropriate where construing it as having been intended to be directory is more consistent with the Legislature's intent. *Id.*

■ The stated purpose of the Penal Code is to "establish a system of prohibitions, penalties, and correctional measures to deal with conduct that unjustifiably and inexcusably causes or threatens harm to those individuals or public interests for which state protection is appropriate." Tex. Penal Code Ann. § 1.02 (West 2011). In Collins' case, the construction that Collins proposes we apply to section 12.31(a)(1) would allow a small but definable group[13] of juveniles to avoid being prosecuted for murder. Given the significant interest the State has in ensuring public safety and order, Collins' construction of the Penal Code would, if adopted, conflict with the Code's stated purpose by allowing some juveniles to escape being punished even though they were guilty of murder. See Faust v. State, 491 S.W.3d 733, 748 (Tex. Crim. App. 2015). We conclude that a rule of strict construction is not required under the rules of construction that apply to the Penal Code. See Tex. Penal Code Ann. § 1.05(a) (West 2011) ("The rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code."); Tex. Gov't Code Ann. § 311.002(1) (West 2013) (providing that the rules in the Code Construction Act apply to each amendment beginning with those made by the 60th Legislature).

■ In our opinion, adopting a directory rather than a mandatory meaning for the word "shall," as that term was used in section 12.31 of the Penal Code, gives section 12.31 a meaning that can be applied that avoids creating an ex post facto violation of Collins' state and federal constitutional rights. See Ex parte Kuester, 21 S.W.3d 264, 268 (Tex. Crim. App. 2000) (declining to adopt a proposed construction of a section of the Code of Criminal Procedure when that construction would place the section in conflict with other laws); Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (noting that it is constitutionally permissible for a court to consider "*extra*textual factors" if adopting an interpretation based on the plain language of a statute would lead to an absurd result). Generally, " 'every reasonable construction must be resorted to in order to save a statute from unconstitutionality.' " Ex parte Flake, 67 Tex.Crim. 216, 149 S.W. 146 (Tex. Crim. App. 1911) (quoting Hooper v. California, 155 U.S. 648, 15 S.Ct. 207, 39 L.Ed. 297 (1895)). In concluding that the Legislature did not intend to increase a juvenile's punishment under the circumstances like those in Collins' case, we have considered not only the meaning of the words in section 12.31(a)(1) of the Penal Code, but also all of the words in the Penal Code, the nature and object of the Penal Code, and the consequences that would follow from the constructions the parties propose for the statute. See Albertson's, Inc. v. Sinclair, 984 S.W.2d 958, 961 (Tex. 1999); Chisholm v. Beverly Mills, 155 Tex. 400, 287 S.W.2d 943, 945 (1956). Because the Penal Code is silent about the consequences that result from a court's failure to comply with the duty Collins argues was mandatory, we have also looked to the purposes of the Penal Code

---

**13.** The small but definable group consists of those children who committed a capital felony or murder prior to the date the amended statute went into effect, September 1, 1999, and who were ten or older but younger than fourteen at the time the offense was committed, and who turned eighteen before their victim died. See Act of May 27, 1999, 76th Leg., R.S., ch. 1477, §§ 8(j), 39(d), 40, 1999 Tex. Gen. Laws 5067, 5069, 5090 (current version at Tex. Fam. Code Ann. § 54.02(j)). There is no evidence in the record that allows us to determine the potential size of this group.

in determining whether the term "shall," as it is used in section 12.31(a)(1), should be given a mandatory or a directory meaning. *See Sinclair*, 984 S.W.2d at 961; *Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 938 (Tex. 1983); *Chisholm*, 287 S.W.2d at 945.

In summary, we conclude that the juvenile court was authorized to apply the amended discretionary transfer statute and transfer Collins' case from juvenile court to a district court. *See* Act of May 27, 1999, 76th Leg., R.S., ch. 1477, §§ 39(d), 40, 1999 Tex. Gen. Laws 5067, 5090 (providing that the changes the Legislature made to the discretionary transfer statute in 1999 apply to discretionary transfer motions filed on or after the effective date of the Act, which was September 1, 1999). Further, we conclude the Legislature did not intend that a mandatory life sentence be applied to cases involving juveniles who were older than ten but younger than fourteen at the time the crime was committed for crimes committed before September 1, 1999, the date the amendments to the discretionary transfer statute became effective. *See id.* Finally, we conclude that the forty-year sentence that Collins received was an authorized sentence because that was the maximum sentence that a juvenile, under the age of fourteen and under the facts of this crime, would have been subject to receiving in 1998 when Collins injured Middleton. As applied to Collins, we hold that the amended discretionary transfer statute did not violate Collins' constitutional rights against the retroactive application of a statute. *See Grimes*, 807 S.W.2d at 587. We overrule issue one.

**Challenge to Transfer**

In his second issue, Collins argues that the evidence admitted during his discretionary transfer hearing is insufficient to support several of the findings that the judge of the juvenile court made to support her ruling granting the County's motion to transfer. According to Collins, the evidence before the court in the hearing does not support the court's findings (1) that Montgomery County exercised diligence in prosecuting Collins before he turned eighteen; (2) that it was not practicable for Montgomery County to proceed with a case in the juvenile court system against Collins; (3) that probable cause did not exist to proceed with a case against Collins when he was a juvenile; and (4) that Montgomery County discovered new evidence about Collins' involvement in Middleton's injury after Collins turned eighteen. *See* Tex. Fam. Code Ann. § 54.02(j)(4)(B) (identifying the factors relevant to deciding a motion to transfer that Collins is challenging in this appeal).[14] In response, the State argues that the evidence admitted during the hearing on the motion allowed the trial court to rationally conclude that it should grant the County's motion and transfer the case to district court. *Id.*

Before a juvenile court judge may transfer a juvenile proceeding to a district court, the State must satisfy the requirements in section 54.02(j) of the Texas Family Code. Tex. Fam. Code Ann. § 54.02(j). Section 54.02(j) provides:

(j) The juvenile court may waive its exclusive original jurisdiction and transfer a person to the appropriate district

---

**14.** Although the Legislature amended some of the provisions that are in section 54.02 of the Family Code after Middleton was injured, the language in subsection 54.02(j)(4)(B) is identical to the language that existed in that subsection when Middleton was injured. *Compare* Tex. Fam. Code Ann. § 54.02(j)(4)(B), *with* Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 34, 1995 Tex. Gen. Laws 2517, 2533–34 (amended 1999, 2009, 2011, 2013). Therefore, we cite the current version when referencing section 54.02(j)(4)(B) of the Family Code.

court or criminal district court for criminal proceedings if:

(1) the person is 18 years of age or older;

(2) the person was:

(A) 10 years of age or older and under 17 years of age at the time the person is alleged to have committed a capital felony or an offense under Section 19.02, Penal Code;

(B) 14 years of age or older and under 17 years of age at the time the person is alleged to have committed an aggravated controlled substance felony or a felony of the first degree other than an offense under Section 19.02, Penal Code; or

(C) 15 years of age or older and under 17 years of age at the time the person is alleged to have committed a felony of the second or third degree or a state jail felony;

(3) no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted;

(4) the juvenile court finds from a preponderance of the evidence that:

(A) for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person; or

(B) after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:

(i) the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person;

(ii) the person could not be found; or

(iii) a previous transfer order was reversed by an appellate court or set aside by a district court; and

(5) the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged.

*Id.*

Collins' appeal concerns only the sufficiency of the evidence supporting the factors that are listed in subsection 54.02(j)(4)(B) of the Juvenile Justice Code. *See id.* § 54.02(j)(4)(B).[15] In reviewing a challenge to the sufficiency of evidence levelled at an order granting a motion for discretionary transfer, we view the evidence in the light most favorable to the findings made by the judge of the juvenile court, disregarding evidence contrary to the juvenile judge's findings unless a reasonable judge could not have rejected that evidence. *See id.* § 54.02(j)(4); *Moon v. State*, 451 S.W.3d 28, 47 (Tex. Crim. App.

15. The entire findings in the order transferring Collins' case recite:
1. [Collins] is a person 18 years of age or older.
2. [Collins] was 10 years of age or older and under 17 years of age at the time Respondent is alleged to have committed an offense under Section 19.02 of the Texas Penal Code.
3. No adjudication concerning the alleged offense has previously been made and no adjudication hearing concerning the alleged offense has previously been conducted.
4. After exercising due diligence, it was not practicable for the [County] to proceed in Juvenile Court before [Collins'] 18th birthday because the [County] did not have probable cause to proceed in Juvenile Court and new evidence has been found since the 18th birthday of the [Collins].
5. There is probable cause to believe that [Collins] committed the offense alleged in the [County's] Petition for Discretionary Transfer.

2014) (limiting an appellate court's review to the facts the judge of the juvenile court found the State proved in the hearing in the order of transfer); *In re D.R.B.*, No. 01-16-00442-CV, 2016 WL 6873067 *4, 2016 Tex. App. LEXIS 12472 *11 (Tex. App.–Houston [1st Dist.] 2016, no pet.). Because the judge's ruling on a motion for discretionary transfer uses a preponderance of the evidence standard, which is a civil standard of proof, we use the standard of review that we utilize in civil cases to review the court's findings. *See Moon*, 451 S.W.3d at 45 ("Facts which must be proven by a preponderance of the evidence are ordinarily susceptible to appellate review for factual sufficiency."); *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (explaining that when a preponderance of the evidence standard applies to an issue in a criminal case, the appeals court uses civil appellate standards in reviewing any challenged rulings).

■■■■ To determine whether the evidence is factually sufficient to support the findings in a civil case, we are required to weigh all the evidence that was before the lower court in the hearing that resulted in the ruling that is being challenged, regardless of whether the evidence was favorable or unfavorable to the lower court's finding. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). On appeal, the party challenging the ruling must demonstrate that the judge's findings were "clearly wrong and unjust," given the evidence that was before the court during the hearing. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (citations omitted). If we determine that the lower court's findings are supported by legally and factually sufficient evidence, we then review the lower court's decision to grant the County's motion to transfer under an abuse-of-discretion standard. *Moon*, 451 S.W.3d at 47; *D.R.B.*, 2016 WL 6873067, at *4–5, 2016 Tex. App.

LEXIS at *12. In applying the abuse-of-discretion standard, we conduct our own analysis of the evidence, and determine whether the juvenile court acted without reference to the guiding rules or principles such that its decision to transfer the case was "essentially arbitrary, given the evidence upon which it was based." *Moon*, 451 S.W.3d at 47.

■■■ With these standards in mind, we turn to Collins' claim that the evidence admitted during the hearing on the County's motion to transfer his case was insufficient to allow the court to grant the motion. According to Collins, the County failed to establish that it exercised due diligence in conducting the investigation of Collins' case before he turned eighteen. The Juvenile Justice Code does not define the term "due diligence," but commonly, the term is defined to mean "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." *See* Tex. Fam. Code Ann. § 51.02 (West Supp. 2016) (Definitions); Black's Law Dictionary 523 (9th ed. 2009). When the Legislature does not specifically define a term used in a statute, we apply the definitions that are found in dictionaries to give words their commonly used meanings. *See* Tex. Gov't Code Ann. § 311.011(a) (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *see also Parker v. State*, 985 S.W.2d 460, 464 (Tex. Crim. App. 1999) (giving words their plain meaning when a statute does not define the words used).

■■■ In his brief, Collins relies on delays that include delays after he turned eighteen in arguing that the juvenile court's findings are clearly wrong. Therefore, we must decide whether delays after Collins turned eighteen are relevant in

evaluating the juvenile court's findings. We conclude that delays after Collins turned eighteen are not relevant in reviewing the juvenile court's findings with respect to the County's diligence. Under section 54.02(j)(4) of the Juvenile Justice Code, the evidence must explain why there were delays in bringing a case against a juvenile before the juvenile turned eighteen. *See* Tex. Fam. Code Ann. § 54.02(j)(4); *see also Moore v. State*, No. PD-1634-14, 2017 WL 510567 *2–3, 2017 Tex. Crim. App. LEXIS 167 *7 (Tex. Crim. App. Feb. 8, 2017) (noting that the period relevant to section 54.02(j)(4)(A) concerned any delays that occurred before the juvenile's eighteenth birthday). Section 54.02(j)(4) does not require that the State explain delays that occurred after the juvenile turned eighteen. *See* Tex. Fam. Code Ann. § 54.02(j)(4). Collins turned eighteen on April 4, 2003, so we review the evidence relevant to the County's explanation for any delays in bringing a case against Collins that occurred before April 4, 2003. *See* Tex. Fam. Code Ann. § 54.02(j)(4)(B).

Twenty-seven witnesses testified during the hearing the juvenile court judge conducted on the County's motion to transfer. The evidence in the hearing shows that the County began its initial investigation into Middleton's injuries the day his injury occurred, and that the initial investigation ended in 2000, when the County dismissed the petition it filed alleging that Collins had engaged in delinquent conduct. The testimony regarding the investigation shows that Detective Zenor was the individual who was in charge of the investigation. Four days after Middleton was injured, and based on the evidence developed at that time, Detective Zenor filed an affidavit with the juvenile court asking

the juvenile court to authorize Collins' detention. On July 24, 1998, William Pattillo III, an attorney employed by the Montgomery County Attorney's office, charged Collins with engaging in delinquent conduct in a petition filed in juvenile court alleging that Collins intentionally, knowingly, or recklessly caused Middleton's injuries. Nearly two years later, on July 18, 2000, Pattillo asked the court to nonsuit the petition, and the motion for nonsuit was granted. In its motion for nonsuit, the County alleged that it "no longer desire[d] to pursue its cause of action against [Collins] in this cause, at this time."

The testimony admitted in the hearing includes Pattillo's explanation about why he decided to ask the juvenile court in July 2000 to dismiss the petition. Pattillo's testimony reflects that as of July 2000, he did not believe the evidence gathered by the police was sufficient to establish that Collins was the person who probably caused Middleton's injuries, which allowed the juvenile court to infer that Pattillo did not believe that he had sufficient evidence to proceed with a case against Collins in juvenile court. According to Pattillo, the evidence that had been developed when the County's petition was dismissed was not sufficiently reliable to establish that Collins was the person who caused Middleton's injury, even though he acknowledged that Collins had given the police a statement indicating that he had thrown gasoline toward a tree, that the gasoline struck Middleton, and that he was present when another juvenile ignited the gasoline with a match. According to Pattillo, the written and oral statements that Collins gave police were unreliable because the statements were not, in his opinion, admissible had the case gone to trial.[16] According to

16. Prior to Collins' trial, Collins filed a motion to suppress the written and recorded statements that police obtained from him. In

his motion, Collins argued that his oral and written statements were obtained in violation of various requirements found in the Family

Pattillo, there were a number of problems regarding the admissibility of Collins' statements.

According to Pattillo, there were other problems with the reliability of the statement to prove that Collins was the person who injured Middleton. Collins' statements about the incident portrayed Middleton's injury as accidental, which Pattillo indicated described a scenario that he thought was inconsistent with claiming that Collins should be found to have engaged in delinquent conduct based on the role Collins admitted in his statements to having played in the incident. Additionally, Pattillo indicated that Collins' written statement was not in Collins' own writing; instead, the written statement that police obtained from Collins was written by the interrogating officer. Pattillo also expressed concern about the length of time that it took the police to obtain the information from Collins, indicating that Collins interview with the police lasted approximately six hours before Collins gave police a written account of his role in the incident. Finally, Pattillo indicated that except for the statements, the County had no physical evidence to tie Collins to the scene of the crime, even though the County had gone to great lengths to obtain such evidence over the course of its investigation.

Pattillo's concern about the strength of the County's case against Collins was not limited to problems that he believed existed regarding Collins' oral and written statements and the lack of any physical evidence tying Collins to the scene. Pattillo also explained that on the day Middleton was injured, Middleton told others that a boy named Rex was the person who had injured him. Pattillo indicated that Middleton's statement identifying Rex as the person who injured him complicated the prospects of convincing a jury that Collins was the person who injured Middleton. Pattillo also explained that Middleton was heavily medicated when he first mentioned Collins to his mother, and that Middleton first mentioned Collins to his mother in response to a question she posed suggesting to Middleton that Collins was the person who had injured him.

Pattillo also addressed why he thought that various statements that Collins reportedly made to other juveniles housed with him while he was being detained in a Montgomery County juvenile facility would prove unreliable to show that Collins engaged in delinquent conduct. The testimony about the statements showed that several juveniles gave Montgomery County authorities written statements concerning statements Collins made to them about Middleton. The statements generally indicate that Collins told these juveniles that he and another juvenile caused Middleton's burns. According to Pattillo, the statements that Montgomery County officials obtained from these juveniles would not prove very reliable because various details in the statement about how Middleton was injured were inconsistent with other evidence that police obtained during their investigation showing how Middleton's injuries occurred. Based on Pattillo's testimony, the juvenile court could reasonably infer that when Pattillo asked to dismiss the petition charging Collins with delinquent conduct in July 2000, he did so because he did not believe he had sufficiently reliable evidence to proceed with a case where he would be required to prove that Collins had engaged in delinquent conduct.

Code. The district court agreed with Collins' arguments, ruled the statements were inadmissible, and the statements that Collins gave the police were not admitted during the trial that took place in district court.

The evidence admitted during the hearing also addresses why Montgomery County did not file a petition charging Collins with delinquent conduct before he turned eighteen. For example, during the hearing, Pattillo explained that he served as the chief juvenile prosecutor for the County Attorney's office until he left his job with the County in April 2004, which is after Collins turned eighteen. According to Pattillo, between the time the County moved to dismiss the petition in July 2000 and the date he left his job as chief juvenile prosecutor, "no new evidence was brought to the County Attorney's office" to show that Collins was guilty of engaging in delinquent conduct with respect to his role in causing Middleton's injuries. Pattillo also testified that when he resigned as chief juvenile prosecutor, no witnesses had come forward claiming that Collins injured Middleton to prevent Middleton from telling others that Collins had sexually assaulted him. From the evidence admitted during the hearing, the juvenile court could reasonably infer that Montgomery County's delays in bringing a case against Collins before he turned eighteen were due to the County's failure to develop sufficient evidence of probable cause to proceed with a case in which it would be required to prove that Collins was guilty of having engaged in delinquent conduct.

Pattillo was the only witness asked during the hearing on the motion to transfer about whether the police conducted a diligent investigation of Middleton's case. According to Pattillo, law enforcement officers worked diligently on Middleton's case, the investigation that they conducted included a thorough search of the crime scene, the use of dive teams and aircraft in an effort to locate physical evidence that might relate to the crime, and the use of forensic investigators and employees of the Fire Marshall's office to evaluate the evidence that was recovered from the scene.

None of the police officers or other witnesses who testified during the hearing were asked during the hearing to address whether the County, before Collins turned eighteen, had obtained sufficient evidence in its investigation to establish probable cause to proceed with a case charging Collins with knowingly or intentionally causing Middleton's injuries.

We have already explained that the Juvenile Justice Code does not define the term "due diligence." The Juvenile Justice Code also does not define the term "probable cause to proceed," which is the phrase used in section 54.02(j)(4)(B)(i) of the Family Code. See Tex. Fam. Code Ann. § 54.02(j)(4)(B)(i) (indicating that the County must prove in the motion to transfer hearing among other things that it did not have "probable cause to proceed" in juvenile court before the juvenile turned eighteen); id., § 51.02 (defining various words used in the Juvenile Justice Code not including "probable cause to proceed"). Moreover, the shorter phrase, "probable cause," is also not defined by Texas law regarding the degree to which a probability must be established to demonstrate that the State has sufficient evidence to charge someone with a crime. See State v. Duarte, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). In absence of statutory definitions for these terms, some courts have indicated that in the context of the Juvenile Justice Code, the term "[d]ue diligence requires the State to 'move ahead' or 'reasonably explain delays.' " In re B.C.B., No. 05-16-00207-CV, 2016 WL 3165595 at *5, 2016 Tex. App. LEXIS 6043 at *13 (Tex. App.–Dallas June 7, 2016, pet. denied) (quoting In re B.R.H., 426 S.W.3d 163, 168 (Tex. App.–Houston [1st Dist.] 2012, no pet.)).

In large part, the parties' dispute regarding the juvenile court's find-

ings regarding whether the County exercised due diligence and had probable cause to proceed arise because they draw different inferences from the evidence that was admitted during the hearing. Because the judge of the juvenile court acted as the factfinder during the hearing, it was that court's role to decide upon the inferences to draw from the testimony, to decide what weight specific testimony deserved, and to decide which witnesses it thought were credible. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). When a judge is required to act as the factfinder in a dispute, the judge may reasonably decide to believe one witness and to disbelieve others. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). When required to act as the factfinder in a hearing, the judge is also permitted to resolve any inconsistencies in the evidence. *Id.* Thus, if the judge could have reasonably inferred that the County acted diligently to investigate Middleton's case before Collins turned eighteen, and could reasonably infer that despite the exercise of diligence the investigation that occurred before Collins turned eighteen failed to develop sufficiently reliable evidence to allow the County to develop probable cause to proceed with a case proving that Collins had engaged in delinquent conduct, an appeals court is not permitted to impose its own opinions even if they might differ. *See City of Keller*, 168 S.W.3d at 819.

We note that both the civil standard of review and the criminal standard of review generally do not allow a reviewing court to substitute findings for those of the lower court when the matter turned on disputed historical facts. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). As the factfinder, the juvenile court judge was authorized to resolve any disputed facts in reaching its conclusion that the County conducted a diligent inves-

tigation into whether Collins was guilty of delinquent conduct. *See Moon*, 451 S.W.3d at 46; *see also Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Additionally, to the extent the juvenile court judge resolved mixed questions of law and fact regarding the elements the County was required to prove to obtain a transfer, the judge's ruling is still required to be given almost complete deference because the ruling depends in part on the manner the judge resolved disputed historical facts. *See Wiede*, 214 S.W.3d at 24–25. Consequently, our review is limited to determining whether the juvenile court's findings based on the testimony admitted in the hearing were reasonable. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *see also State v. White*, 306 S.W.3d 753, 757 n.10 (Tex. Crim. App. 2010) (citing *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003)).

The testimony from the hearing addressed the County's efforts at investigating Middleton's case, what the County learned in the investigation and when it learned it, why the County viewed the evidence that it developed as unreliable to prove that Collins engaged in delinquent conduct, and why the County decided to dismiss the petition it filed after it charged Collins with knowingly and intentionally causing Middleton's injuries. Given the conflicting inferences that were available from the testimony, the juvenile court's determinations are given almost complete deference because the juvenile court resolved a mixed question of law and fact. *See In re B.R.H.*, 426 S.W.3d at 168.

In his brief, Collins criticizes the County for not discovering the identity of some of the witnesses who testified in his trial before he turned eighteen. However, the officials charged with investigating a juve-

nile case are not required " 'to do everything perceivable and conceivable to avoid delay.' " *In re B.C.B.*, No. 05-16-00207-CV, 2016 WL 3165595 at *5, 2016 Tex. App. LEXIS at *13 (quoting *In re N.M.P.*, 969 S.W.2d 95, 100 (Tex. App.–Amarillo 1998, no pet.)). Instead, the Juvenile Justice Code simply requires the officials responsible for the investigation to exercise due diligence, a term that suggests the investigation must be reasonable given the alleged conduct of the juvenile in light of the information that was gathered during the investigation. *See* Tex. Fam. Code Ann. § 54.02(j)(4)(B).

In our opinion, the juvenile court judge's resolution of whether the County established the various elements it was required to establish to support its decision to transfer the case to a district court was reasonable, given the testimony admitted during the hearing. In considering whether the County exercised diligence in investigating the case, the trial court was entitled to consider evidence showing that members of Collins' family hindered the County's investigation into the role Collins played in causing Middleton's injuries. On this record, it was the prerogative of the juvenile court to exercise its broad discretion as the factfinder to find that the County established that it conducted a diligent investigation of Middleton's case, and to find that the County reasonably explained why it failed to proceed with a case against Collins before Collins turned eighteen. *See Moon*, 451 S.W.3d at 47.

Next, we address Collins' argument that the evidence admitted in the hearing was insufficient to support the juvenile court's finding that the State discovered new evidence after Collins turned eighteen. According to Collins, the evidence that the County developed after re-opening Middleton's case in 2011 should not reasonably be considered to have been new evidence because the County could have discovered the evidence had it diligently investigated Middleton's case before Collins turned eighteen. In response, the State points to the following evidence to support the juvenile court's finding that it discovered new evidence after Collins turned eighteen. First, the State points to the testimony provided by Middleton's sister, Heather Middleton Richards, who testified during the hearing that around 2009, Middleton told her that Collins had sexually assaulted him. Second, the State points to the fact that in 2011, it discovered that Middleton had given a deposition in a civil case that he filed against Collins in 2011. In his deposition, Middleton testified that Collins injured him in 1998 because he wanted to prevent Middleton from telling others that Collins had molested him. Third, the State points to the testimony of Heather White, who testified that Collins told her on the evening after Middleton was injured that he set Middleton on fire to prevent Middleton from telling anyone that Collins had molested him.

In our opinion, the evidence admitted during the hearing allowed the judge of the juvenile court to find that the County did discover new evidence that it had not discovered before Collins turned eighteen. Additionally, the juvenile court judge could also reasonably conclude that the newly discovered evidence had not been discovered despite the County's exercise of due diligence. While the State was not required to establish what motivated Collins to injure Middleton to prove that he had engaged in delinquent conduct in 1998 when he injured Middleton, the juvenile court have reasonably believed that the County would have viewed its chances of proceeding with a case against Collins as sufficient to prove that he was guilty of delinquent had it discovered the evidence of motive before Collins turned eighteen. Additionally, the juvenile court could have viewed

Heather White's testimony about the statements Collins made to her on the evening Middleton was injured as evidence that would have significantly improved the County's case against Middleton, had the County discovered the information she gave them before Collins turned eighteen. We hold that the juvenile court had sufficient evidence before it to rationally conclude that the County established each of the elements required to justify granting the County's motion to transfer Collins' case from juvenile court to district court. *See* Tex. Fam. Code Ann. § 54.02(j)(4).

Having decided that the evidence before the juvenile court supports the findings required to justify the court's ruling, we must now determine whether the juvenile court abused its discretion by granting the County's motion to transfer the case for trial in a district court. *Id.* In evaluating the juvenile court's ruling, we are to determine whether the judge acted without reference to any guiding rules or principles when it granted the County's motion to transfer. *Id.* (citing *In re J.R.C.S.*, 393 S.W.3d 903, 914 (Tex. App.–El Paso 2012, no writ)). In this case, the record shows that the judge of the juvenile court considered the statutory requirements that are in section 54.02(j), which includes the specific findings that Collins is challenging in his appeal. When the testimony admitted during the hearing on the motion to transfer is viewed in the light that favors the findings, the findings the judge made and the judge's inferences from the evidence were reasonable given the evidence that was admitted in the hearing. *Moon*, 451 S.W.3d at 46 ("As long as the appellate court can determine that the juvenile court's judgment was based upon facts that are supported by the record, it should refrain from interfering with that judgment absent a scenario in which the facts identified in the transfer order, based on evidence produced at the transfer hearing

. . . bear no rational relation to the specific reasons the order gives to justify [the lower court's conclusions.]"). The record also reflects that the evidence before the court in the hearing addressed all of the factors relevant to motions to transfer under the Juvenile Justice Code, and that the judge of the juvenile court considered all of the conditions that govern motions to transfer that are required under section 54.02(j) of the Juvenile Justice Code. We hold the judge of the juvenile court did not abuse her discretion by granting the State's motion to transfer the proceedings to a district court. We overrule issue two.

Having carefully reviewed Collins' issues and his arguments, we affirm the trial court's judgment.

AFFIRMED.