

# NUMBER 13-21-00371-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE MATTER OF C.C.C., A JUVENILE

**On appeal from the 484th District Court
of Cameron County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Memorandum Opinion by Chief Justice Contreras**

Appellant C.C.C. was charged with delinquent conduct as a juvenile. After he reached the age of eighteen in 2021, the juvenile court transferred the case to criminal court pursuant to the State's petition. *See* TEX. FAM. CODE ANN. § 54.02. By three issues, C.C.C. argues on appeal that the transfer was error because: (1) the State failed to establish that it exercised due diligence in proceeding in juvenile court before his eighteenth birthday or that the failure to do so was due to circumstances beyond its control; (2) neither C.C.C. nor his parents were served with a summons regarding the

final hearing date; and (3) there was no probable cause that he committed the charged offenses. We reverse and render judgment of dismissal.

## I. BACKGROUND

The underlying charges arose out of an accident which occurred on or about March 30, 2020, about two months before C.C.C.'s seventeenth birthday. According to the State, C.C.C. was driving an all-terrain vehicle (ATV) when it flipped, causing the death of his friend, D.A.L. After the Cameron County Sheriff's Office conducted an investigation, a magistrate signed an arrest warrant for C.C.C. on October 20, 2020. C.C.C. turned himself in to law enforcement on October 23, 2020, and was released to the custody of his parents after a videoconference detention hearing three days later. During the detention hearing, the prosecutor stated that "[w]e have received all of the evidence" and that she expected the State would be able to decide whether to file a petition for discretionary transfer to criminal court before C.C.C. turned eighteen years of age in May 2021.

In its "Petition for Discretionary Transfer to Criminal Court" filed on November 9, 2020, the State sought to charge C.C.C. as an adult with the state jail felony offense of criminally negligent homicide. *See* TEX. PENAL CODE ANN. § 19.05. The State argued that, "because of the serious nature of the alleged offense mentioned above, the prospects of adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of the procedures, services and facilities currently available to the Juvenile Court is in serious doubt." On December 15, 2020, the State filed an amended petition adding second-degree felony charges of manslaughter and aggravated assault causing serious bodily injury. *See id.* §§ 19.04, 22.02(a)(1).

2

On January 19, 2021, the juvenile court ordered the preparation of a "complete psychiatric evaluation," a "complete psychosocial evaluation," and a "full social evaluation and complete diagnostic study" with regard to C.C.C. *See* Tex. Fam. Code Ann. §§ 51.20(a), 54.02(d). In compliance with the court's order, psychologist Mario Tovar, Ph.D. filed a psychosocial evaluation report on February 15, 2021; psychiatrist David Morón, M.D. filed a psychiatric evaluation report on March 29, 2021; and juvenile probation officer Laura Armijo filed a "Social Study and Diagnostic Study" on March 30, 2021.

A hearing on the State's petition for discretionary transfer was initially set for February 17, 2021, but was continued and reset for April 14, 2021. On April 14, C.C.C.'s counsel objected to the hearing going forward on grounds that C.C.C. and his parents had been served with the summons and a copy of the State's amended petition only minutes before the hearing. *See id.* § 53.07. The prosecutor replied that C.C.C.'s counsel "is entitled to 10 days" and "[w]e're willing to give him the 10 days." The court initially reset the hearing for May 5, but C.C.C.'s counsel stated that he had a conflict in federal court on that date. The following colloquy then occurred:

| THE COURT: | Okay. How about the following Wednesday? |
| THE ADMINISTRATOR: | May 12th? |
| [Prosecutor]: | Judge, we have no objection to June 9th. |
| THE COURT: | What? |
| [Prosecutor]: | June 9th. |
| THE COURT: | What about June 9th? |
| [C.C.C.'s counsel]: | Judge, I don't have an issue with a reset, but I don't want the State to later argue that my client is now 18 and that this Court has no choice but |

3

|  | to transfer jurisdiction. |
|---|---|
|  | My client is 17. He's a juvenile. This alleged offense occurred when he was 16, and so as long as the State is not wanting to reset this date for the date after and then argue to the Court that, you know, "We're asking that it be transferred for that reason." |
| [Prosecutor]: | Judge, after his 18th birthday, I have every right to do that. And if we don't proceed today, we can proceed any time. My arguments remain the same. |
| [C.C.C.'s counsel]: | As long as that argument is not made. |
| [Prosecutor]: | We announce ready, Your Honor. |
| THE COURT: | Okay. So what is the situation, [C.C.C.'s counsel]? What do you want to do? |
| [C.C.C.'s counsel]: | June 9th would work for me, Your Honor. |
| THE COURT: | June 9th. |
| [C.C.C.'s counsel]: | Yes, Your Honor. |
| THE COURT: | Okay. June 9th. |

C.C.C. turned eighteen years of age on May 19, 2021. On June 3, he filed a "Motion to Dismiss Based on Lack of Compliance With [§] 54.02(j) of the Texas Family Code and Lack of Jurisdiction." In the motion, C.C.C. argued that "the State has no justifiable reasons why it was not practicable to proceed in juvenile court before [C.C.C.'s] 18th birthday" and asked the juvenile court to deny the State's motion to transfer. The motion stated specifically that C.C.C. was not served with "a summons of the State's First Amended Petition for Discretionary Transfer" until "approximately fifteen minutes" before the April 14, 2021 hearing. He argued that "it took the State 4 months to serve [C.C.C.] and his parents with the State's Petition for Discretionary Transfer" even though C.C.C. was "regularly reporting to his juvenile probation officer" and "the State was fully aware of

4

where [C.C.C.] resided with his mother as well as where his father and mother were employed."

Because C.C.C.'s counsel had another conflict in federal court, the parties agreed to reset the hearing on the State's petition to transfer from June 9, 2021, to August 11, 2021. Later, the hearing was reset again for October 8, 2021. On October 7, the State filed its response to C.C.C.'s motion to dismiss arguing that it "has shown due diligence in the investigation and filing of this cause number." The State noted in its response that, although the State was ready to proceed on April 14, defense counsel "refused to waive issues of [s]ervice." It also argued that, under the Texas Supreme Court's emergency orders concerning the COVID-19 pandemic, "Texas Courts must . . . 'modify or suspend any and all deadlines and procedures . . .' until further notice" (ellipses in original).

## A.    Hearing on Motion to Dismiss

At the beginning of the hearing on October 8, the juvenile court heard arguments on C.C.C.'s motion to dismiss. C.C.C.'s counsel argued that the State could not show that, due to reasons beyond its control, it was impracticable to proceed in juvenile court before C.C.C.'s eighteenth birthday. *See id.* § 54.02(j)(4)(A). Specifically, counsel argued that "the only reason we did not have a hearing on the 14th of April," before C.C.C. turned eighteen, was because the summons was not timely served on C.C.C. or his parents. *See id.* § 53.06 (regarding service of summons in juvenile cases). He noted that the trial court issued the summons on December 17, 2020, but the summons was not served until minutes before the April 14 hearing. Counsel further noted that, under the statute, a child may not waive service of the summons for a discretionary transfer hearing "by written stipulation or by voluntary appearance at the hearing." *See id.* § 53.06(e).

5

In response, the prosecutor argued:

> Your Honor, first of all, I'd like to defend your bailiffs. Your bailiffs are under COVID protocols since March 13th of 2020 and this allegation occurred on March 30th of 2020. And at that time the Texas Supreme Court issued several emergency declarations saying that no extraordinary business could be conducted unless it was pertinent to justice. And there are several other—the Texas governor issued the same declaration, the county judge issued the same declaration, and your protocol for your bailiffs here in this court are to await the arrival of the person for the case and then serve him at that time. This is what they've done for years and years. If you want them to testify, they will stand up and testify.

The prosecutor next urged that C.C.C.'s argument regarding lack of service "went outside the scope of his motion" because the motion was based on § 54.02(j), which does not concern service. Finally, the prosecutor contended that there was no "unnecessary delay" and that "[w]ith COVID protocols in place, we went strictly as fast as we could with due diligence, we filed as much as we could, we amended before the trial." The prosecutor noted that the State "announced ready" at the April 14 setting, whereas C.C.C.'s counsel "decided not to waive the issues of service" but instead "requested a hearing and that was the June 9th hearing."[1]

The juvenile court orally denied C.C.C.'s motion to dismiss. Before pronouncing its ruling, the court stated that, under the Texas Supreme Court's emergency pandemic orders in effect on April 14, 2021, "no hearings could be held unless they were emergency hearings." The court further recounted that the chairman of the county juvenile board and the county juvenile probation department agreed that "the only cases that we considered to be emergency cases in which we had to act upon immediately were the ones in custody

---

[1] The prosecutor further noted that the June 9 setting was continued until August only because C.C.C.'s counsel had a conflict in federal court on June 9. In reply, C.C.C.'s counsel argued that his request for a continuance from June to August is "irrelevant" to the issue at hand because, by the time he made that request on June 4, C.C.C. had already turned eighteen.

6

because they have to have a 10-day detention hearing."

The court further stated as follows:

The Court will take judicial notice that in the juvenile court that I've been here since I retired, we've been here three years, and even before then, that the juvenile and the parents are served in court by the two bailiffs that we have. Our bailiffs do not go somewhere else and do not leave the premises to serve anybody and that's been the practice of the Court for a long time. I don't know exactly—I don't think we've ever had our bailiffs go out and serve anybody in the community.

. . . .

So based on the arguments of counsel, based on the motions filed, based on the case timeline, the Court is going to find that the State did do due diligence in handling this case due to the circumstances as they existed . . . under COVID.

. . . .

The Court will take judicial notice of the fact that the COVID orders were in place here in the juvenile department and at the detention center, our detention center, that the staff had to deal with the situation as it presented itself, they tried to make sure that the kids in custody didn't have COVID—in fact, some of the kids did come out positive for COVID—that the staff were not exposed to it, and that was their priority at the time and had to be the priority based on the health of everybody and keeping everybody safe and following all the other orders that were sent our way.

And so the procedure of this Court is that the bailiffs serve the individual the first time they come to court. So if they come to court for an announcement, they come for the first hearing, at that time they're served. If they haven't been served before they go to trial, and like [C.C.C.'s counsel] stated, they get served 15 minutes before, I always allow the defense attorney the right to either waive because they feel that they're ready or I give them their 10-day notice to prepare for trial.

And I have never denied a defense attorney that motion and that request, because I agree with you, you know, they cannot be ready in 15 minutes if they just got served and haven't been working on the case, they just got hired or the first time they met their client.

We also have the problem that a lot of the juveniles, even though they're told to come, you know, do not appear because the parents cannot bring them, because they're working, many, many reasons this Court hears. So I will find that, again, that the State did do due diligence.

7

**B.** **Hearing on Petition for Discretionary Transfer**

After denying the motion to dismiss, the court heard testimony regarding the petition for discretionary transfer. Rosie Hernandez, the Cameron County Sheriff's Deputy who initiated the investigation, testified that when she responded to the scene of the accident and tried to interview C.C.C., C.C.C. "blurted out" to her that "I was going really fast, closed my eyes and the ATV flipped over."[2] She said that the road where the accident occurred was a "blacktop" and that she believed C.C.C. "may have lost control" of the ATV near "a very deep curve" in the road. She did not know whether the victim was wearing a seat belt. Hernandez read excerpts from the ATV's owner's manual exhorting the operator to "slow down before entering [a] turn" and to "avoid sharp turns to keep the vehicle from tipping." Hernandez stated: "Based on the evidence at the scene, and only based on those facts, was I able to charge [C.C.C.] with the crime."

Karlo Ruiz, a Cameron County juvenile probation officer, testified that according to Tovar's report, C.C.C. "has the maturity, sophistication and the mindset to understand what is happening in this court." He stated that the juvenile probation department does not have "rehabilitative therapies" for juveniles accused of criminally negligent homicide, manslaughter, or aggravated assault; instead, he agreed that "the only options" available are "prison, detention, or discretionary transfer to the adult system."

Armijo testified that she was C.C.C.'s probation officer and she prepared the "Social Study and Diagnostic Study," which included Tovar's and Morón's reports. She stated that C.C.C. reported to her telephonically every Wednesday. At the time of the

---

[2] Prior to Hernandez's testimony, the prosecutor advised the court that "this is only a probable cause hearing and that hearsay is allowed and Rules of Evidence generally don't apply." The court replied that it "will take judicial notice."

hearing, C.C.C. had graduated high school and was taking college classes. Armijo testified that C.C.C.'s school disciplinary records showed "nothing negative," and there was nothing indicating he was "into gang activities or using drugs." She agreed that, based on the reports and her research, C.C.C. is "an exemplary child." However, she conceded that she recommended in her report that the court grant the motion for discretionary transfer "[b]ased on the interview, the reports gathered for this diagnostic study, the maturity and sophistication of the child in question, the prospects of adequate protection of the public and the lack of rehabilitation services available to the juvenile court."

The juvenile court stated it had reviewed the reports submitted by Tovar, Morón, and Armijo, and it orally granted the State's petition for discretionary transfer, giving the following reasons:

> All of the offenses alleged are violent offenses against a person. Also a report from the doctor supports that the juvenile respondent has sufficient maturity to be tried as an adult. Further, the juvenile respondent is now currently 18 years of age or older and by his action has displayed a level of sophistication and maturity sufficient for him to be tried as an adult.
>
> Finally, the seriousness of the offenses alleged in connection with the other factors mentioned, including the juvenile's age, demonstrate the lack of available rehabilitative options in the juvenile system and the need for adult criminal proceedings in order to protect the community.

After the hearing, the juvenile court signed an order reiterating the above-quoted findings and also stating:

> The Court finds that all those entitled to service of summons were properly served with summons, in compliance with [§] 53.07 Texas Family Code, and that this Court had jurisdiction to proceed.
>
> The Court finds that the attorney for the Juvenile-Respondent has had at least ten (10) days to prepare for this discretionary transfer hearing.
>
> . . . .

9

The Court finds by a preponderance of the evidence that for a reason beyond the control of the state, it was not practicable to proceed in juvenile court before the Respondent's 18th birthday due to the Emergency Orders issued by the Supreme Court of Texas limiting proceedings in response to the COVID-19 pandemic, multiple resets made by the court due to said orders, and the lack of receiving the Social and Diagnostic Study so ordered by the Court on January 19, 2021, by the Respondent's 18th birthday.

. . . .

After considering evidence and argument of counsel, this Court finds that the welfare of the community requires criminal proceedings, [and] that there is probable cause to believe that the child committed the [charged offenses].

. . . .

This Court is hereby waiving its exclusive, original jurisdiction for the following reasons:

(1)     The Juvenile-Respondent was 14 years of age or older at the time he is alleged to have committed the offenses of Criminal[ly] Negligent Homicide, Manslaughter and Aggravated Assault Caus[ing Serious Bodily Injury];

(2)     The sophistication and maturity of [C.C.C.];

(3)     Inadequate protection of the public; and

(4)     The unlikelihood of the rehabilitation of the child by the use of procedures, services, and facilities currently available to the juvenile court.

The court ordered that C.C.C. "be committed immediately to the custody of the Sheriff of Cameron County, Texas and dealt with as an adult."

This accelerated appeal followed. *See* TEX. FAM. CODE ANN. § 56.01(c)(1)(A) ("An appeal may be taken . . . by or on behalf of a child from an order entered under . . . [§] 54.02 respecting transfer of the child for prosecution as an adult . . . ."); *id.* § 56.01(h) ("If the order appealed from takes custody of the child from the child's parent, guardian, or custodian or waives jurisdiction under [§] 54.02 and transfers the child to criminal court for prosecution, the appeal has precedence over all other cases.").

## II. DISCUSSION

### A. Applicable Law

"Children ordinarily are not subject to criminal proceedings like adults." *In re S.G.R.*, 496 S.W.3d 235, 238 (Tex. App.—Houston [1st Dist.] 2016, no pet.). When a child engages in conduct that would be considered criminal if committed by an adult, it is called "delinquent conduct." *See* TEX. FAM. CODE ANN. § 51.03(a)(1). Juvenile courts have exclusive original jurisdiction over cases involving delinquent conduct by children between ten and seventeen years old. *Id.* §§ 51.02(2)(A), 51.04(a). Delinquency proceedings against minors proceed in juvenile court under the Juvenile Justice Code, codified in Title 3 of the Texas Family Code. *See id.* §§ 51.01–61.107.

A juvenile court may waive its exclusive original jurisdiction under certain conditions and transfer the proceeding to a district court for criminal prosecution. *See id.* § 54.02(a), (j). "The transfer of a juvenile offender from juvenile court to criminal court for prosecution as an adult should be regarded as the exception, not the rule." *Ex parte Thomas*, 623 S.W.3d 370, 376 (Tex. Crim. App. 2021) (noting that, whenever feasible, "children and adolescents below a certain age should be protected and rehabilitated rather than subjected to the harshness of the criminal system."). "The burden is upon the State to prove transfer is appropriate." *Id.* What the State must prove to obtain transfer depends on whether the minor has reached the age of eighteen by the date of the transfer hearing. *In re A.M.*, 577 S.W.3d 653, 658 (Tex. App.—Houston [1st Dist.] 2019, pet. granted). Section 54.02(a) applies where the juvenile is under eighteen years of age at the time of the transfer hearing, while § 54.02(j) applies where the juvenile is eighteen years of age or older at the time of the hearing. *Id.*; *see Morrison v. State*, 503 S.W.3d

11

724, 727–28 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

Under § 54.02(a),

The juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if:

(1)     the child is alleged to have violated a penal law of the grade of felony;

(2)     the child was:

(A)     14 years of age or older at the time he is alleged to have committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; or

(B)     15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning that offense; and

(3)     after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

TEX. FAM. CODE ANN. § 54.02(a).[3] On the other hand, § 54.02(j) states:

---

[3] Subsection (f) of § 54.02 states:

In making the determination required by Subsection (a) of this section, the court shall consider, among other matters:

(1)     whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2)     the sophistication and maturity of the child;

(3)     the record and previous history of the child; and

(4)     the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

The juvenile court may waive its exclusive original jurisdiction and transfer a person to the appropriate district court or criminal district court for criminal proceedings if:

(1)     the person is 18 years of age or older;

(2)     the person was:

    (A)     10 years of age or older and under 17 years of age at the time the person is alleged to have committed a capital felony or an offense under Section 19.02, Penal Code;

    (B)     14 years of age or older and under 17 years of age at the time the person is alleged to have committed an aggravated controlled substance felony or a felony of the first degree other than an offense under Section 19.02, Penal Code; or

    (C)     15 years of age or older and under 17 years of age at the time the person is alleged to have committed a felony of the second or third degree or a state jail felony;

(3)     no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted;

(4)     the juvenile court finds from a preponderance of the evidence that:

    (A)     for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person; or

    (B)     after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:

        (i)     the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person;

        (ii)     the person could not be found; or

        (iii)     a previous transfer order was reversed by an appellate court or set aside by a district court; and

(5)     the juvenile court determines that there is probable cause to believe

---

TEX. FAM. CODE ANN. § 54.02(f). There is no similar statute requiring the juvenile court to consider these or any other factors when making a transfer determination under § 54.02(j).

13

that the child before the court committed the offense alleged.

*Id.* § 54.02(j); *see Moore v. State*, 532 S.W.3d 400, 405 (Tex. Crim. App. 2017) (noting that § 54.02(j)(4)(A) "is meant to limit the prosecution of an adult for an act he committed as a juvenile if his case could reasonably have been dealt with when he was still a juvenile").

Once an accused turns eighteen years old, the juvenile court's jurisdiction is generally limited to either dismissing the case or transferring the case to criminal court. *In re B.R.H.*, 426 S.W.3d 163, 166 (Tex. App.—Houston [1st Dist.] 2012, no pet.). However, the juvenile court

> retains jurisdiction over a person, without regard to the age of the person, who is a respondent in . . . a proceeding for waiver of jurisdiction and transfer to criminal court under [§] 54.02(a) . . . if:
>
> (1)    the petition or motion was filed while the respondent was younger than 18 or 19 years of age, as applicable;
>
> (2)    the proceeding is not complete before the respondent becomes 18 or 19 years of age, as applicable; and
>
> (3)    the court enters a finding in the proceeding that the prosecuting attorney exercised due diligence in an attempt to complete the proceeding before the respondent became 18 or 19 years of age, as applicable.

TEX. FAM. CODE ANN. § 51.0412; *In re J.C.W.G.*, 613 S.W.3d 560, 566 (Tex. App.—San Antonio 2020, no pet.); *In re B.R.H.*, 426 S.W.3d at 166–67.

## B.    Standard of Review

In reviewing a discretionary transfer, we evaluate the trial court's findings of fact under traditional sufficiency of the evidence principles. *In re A.M.*, 577 S.W.3d at 658. In reviewing legal sufficiency, we view the evidence in the light most favorable to the court's findings to determine whether there is more than a scintilla of evidence to support them.

14

*In re J.C.W.G.*, 613 S.W.3d at 569. "Under a factual-sufficiency challenge, we consider all the evidence presented to determine if the court's finding is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust." *In re A.M.*, 577 S.W.3d at 659.

"If the findings of the juvenile court are supported by legally and factually sufficient proof, then we review the ultimate waiver decision under an abuse-of-discretion standard." *Id.*; *see Collins v. State*, 516 S.W.3d 504, 520 (Tex. App.—Beaumont 2017, pet. denied). A court abuses its discretion if it acts without reference to any guiding rules and principles. *In re Nat'l Lloyds Ins.*, 507 S.W.3d 219, 226 (Tex. 2016) (orig. proceeding). An abuse of discretion does not occur when a trial court bases its decisions on conflicting evidence. *See In re B.N.F.*, 120 S.W.3d 873, 877 (Tex. App.—Fort Worth 2003, no pet.). But "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). "Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.*

## C.     Practicability of Proceeding in Juvenile Court

By his first issue, C.C.C. contends that the juvenile court erred by concluding that the State (1) exercised due diligence in "bringing C.C.C.'s matter to a close before his eighteenth birthday" and (2) showed by a preponderance of the evidence that "it could not feasibly proceed against C.C.C. before his eighteenth birthday because of circumstances beyond its control."[4]

---

[4] By his second issue, C.C.C. contends that service of the summons did not strictly comply with due process or the family code, and therefore the juvenile court lacked jurisdiction to consider the State's motion to transfer. *See id.* §§ 53.06, 53.07(a), 54.02(k) (providing that a summons for a hearing on a petition

15

At the outset of our analysis, we observe that the parties and the juvenile court appear to have discussed a multitude of elements which are not applicable in a case of this type. In its oral and written findings, the trial court stated that it considered, among other things: (1) the seriousness of the charged offenses; (2) that the charged offenses were against a person rather than property; (3) C.C.C.'s "sophistication and maturity"; (4) the "lack of rehabilitative options in the juvenile system"; (5) the "need for criminal proceedings in order to protect the community" and whether "the welfare of the community requires criminal proceedings"; (6) the prospects of adequate protection of the public; and (7) the "unlikelihood of the rehabilitation of the child by the use of procedures, services, and facilities currently available to the juvenile court." All of these factors are necessary considerations in determining whether to transfer a juvenile to criminal court under subsection (a) of § 54.02. *See* TEX. FAM. CODE ANN. § 54.02(a)(3), (f). But C.C.C. was

---

for discretionary transfer must be served on an in-state juvenile at least two days before the day of the hearing); *Ex parte Rodriguez*, 466 S.W.3d 846, 850, 851 (Tex. Crim. App. 2015) (noting that "the failure to comply with § 54.02(b) deprives the juvenile court of jurisdiction to transfer the case" and that, for a judgment to survive a direct attack based on defective service, "strict compliance with the rules for service of citation [must] affirmatively appear on the record"). The State acknowledges that C.C.C. was never served with a written summons specifically mentioning the October 8, 2021 hearing date; nevertheless, it argues that the statutory requirements were satisfied because C.C.C. was orally "summoned by the presiding judge" at the April 14, 2021 hearing. The State cites *In re K.P.S.*, in which we held that "the trial judge's oral summons and in-court service [of an adjudication petition] to the appellant, his guardian, and his attorney were sufficient to satisfy the requirements of §§ 53.06 & 53.07." 840 S.W.2d 706, 708 (Tex. App.—Corpus Christi–Edinburg 1992, no writ). The State further argues that, even if C.C.C. was not properly served, he waived service of the summons by voluntarily appearing at the October 8, 2021 hearing, at which time he was no longer a "child." *See* TEX. FAM. CODE ANN. § 51.02(2) (defining "child" as a person who is "(A) ten years of age or older and under 17 years of age; or (B) seventeen years of age or older and under 18 years of age who is alleged or found to have engaged in delinquent conduct or conduct indicating a need for supervision as a result of acts committed before becoming 17 years of age"); *id.* § 53.06(e) ("A party, other than the child, may waive service of summons by written stipulation or by voluntary appearance at the hearing."); *see also Paz v. State*, No. 08-15-00354-CR, 2017 WL 2351349, at *6 (Tex. App.—El Paso May 31, 2017, no pet.) (not designated for publication) (holding, where juvenile appellant argued that procedural requirements for service of the petition for discretionary transfer were not met, that "[a]ppellant was an adult at the time of this hearing and thus his appearance waived any technical service deficiency" under § 53.06(e)).

For purposes of this opinion, we assume but do not decide that the trial court had jurisdiction to consider the State's petition for discretionary transfer.

16

eighteen years old at the time of the discretionary transfer hearing; therefore, § 54.02(a) is not applicable to this case. *See id.*; *In re A.M.*, 577 S.W.3d at 658; *Morrison*, 503 S.W.3d at 727–28. Instead, this case proceeded exclusively under § 54.02(j), which concerns the transfer of a person who was charged as a juvenile but has since reached the age of eighteen. *See* TEX. FAM. CODE ANN. § 54.02(j). In a transfer proceeding under subsection (j), the juvenile court is not instructed to consider the factors enumerated above.[5]

Moreover, the court's oral findings reflect that one of its primary considerations in deciding the merits of the transfer petition was whether the State exercised "due diligence in handling this case," and the parties extensively brief the issue of due diligence in their arguments regarding grounds for transfer. To transfer a case under § 54.02(j)(4)(B), the juvenile court must find by a preponderance of the evidence that "after due diligence of the state it was not practicable to proceed" before the juvenile's eighteenth birthday. *Id.* § 54.02(j)(4)(B).[6] But that part of the statute applies only if the court finds it was impracticable to proceed in juvenile court

because:

(i)     the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person;

(ii)    the person could not be found; or

(iii)   a previous transfer order was reversed by an appellate court or set aside by a district court.

---

[5] Although the trial court was correct to order a diagnostic study including psychological and psychosocial evaluations because C.C.C. was under eighteen at the time of the order, the statute does not require this to be done when transfer is sought under subsection (j). *See* TEX. FAM. CODE ANN. § 54.02(*l*) ("Except as otherwise provided by this subsection, a waiver of jurisdiction under Subsection (j) may be made without the necessity of conducting the diagnostic study or complying with the requirements of discretionary transfer proceedings under Subsection (d).").

[6] The elements listed in § 54.02(j)(1), (2) and (3) have undisputedly been satisfied in this case.

17

*Id.* None of these reasons has ever been alleged or proven in this case. Accordingly, § 54.02(j)(4)(B) is not applicable. Instead, this case proceeded exclusively under § 54.02(j)(4)(A), which does not require a showing of due diligence. *See id.* § 54.02(j)(4)(A). Under that section, the State only needed to show by a preponderance of the evidence that it was not practicable to proceed in juvenile court before C.C.C.'s eighteenth birthday "for a reason beyond the control of the state." *Id.* We therefore confine our analysis to this element.

In its written order granting the transfer petition, the juvenile court stated that it found this element true for three reasons: (1) "the Emergency Orders issued by the Supreme Court of Texas limiting proceedings in response to the COVID-19 pandemic"; (2) "multiple resets made by the court due to said orders"; and (3) "the lack of receiving the Social and Diagnostic Study so ordered by the Court on January 19, 2021, by [C.C.C.]'s 18th birthday."

With respect to the third finding, the record demonstrates that Armijo filed her "Social Study and Diagnostic Study," which included Tovar's and Morón's reports, on March 30, 2021—that is, fifty days before C.C.C.'s eighteenth birthday. Therefore, there is no evidence to support the juvenile court's finding that it did not "receiv[e] the Social and Diagnostic Study . . . by the Respondent's 18th birthday." In any event, as noted above, the preparation of a social study is not required in a transfer proceeding under § 54.02(j), *see id.* § 54.02(*l*), and the matters addressed in such a study are not relevant to the issue before the court—i.e., whether it was impracticable to proceed in juvenile court before C.C.C.'s eighteenth birthday "for a reason beyond the control of the state." *See id.* § 54.02(j)(4)(A).

The first two findings concern the Texas Supreme Court's pandemic orders and "multiple resets" allegedly made pursuant to those orders. The emergency order in effect at the time of C.C.C.'s arrest, issued on September 18, 2020, provides in part:

2.     Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:

a.     except as provided in paragraph (b), modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than December 1, 2020;

b.     [concerning proceedings under Subtitle E, Title 5 of the Family Code, not applicable here]

c.     except as this Order provides otherwise, allow or require anyone involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, court reporter, grand juror, or petit juror—to participate remotely, such as by teleconferencing, videoconferencing, or other means;

d.     consider as evidence sworn statements made out of court or sworn testimony given remotely, out of court, such as by teleconferencing, videoconferencing, or other means;

e.     conduct proceedings away from the court's usual location with reasonable notice and access to the participants and the public;

f.     require every participant in a proceeding to alert the court if the participant has, or knows of another participant who has: (i) COVID-19 or flu-like symptoms . . . ; or (ii) recently been in close contact with a person who is confirmed to have COVID-19 or exhibiting the symptoms described above;

g.     take any other reasonable action to avoid exposing court proceedings to the threat of COVID-19.

3.     Courts must not conduct in-person proceedings contrary to the *Guidance for All Court Proceedings During COVID-19 Pandemic* ("Guidance") issued by the Office of Court Administration, which may be updated from time to time, regarding social distancing, maximum group size, and other restrictions and precautions. Prior to holding

19

any in-person proceedings, a court must submit an operating plan that is consistent with the requirements set forth in the Guidance. Courts must continue to use all reasonable efforts to conduct proceedings remotely.

*Twenty-Sixth Emergency Order Regarding COVID-19 State of Disaster*, 609 S.W.3d 135, 136 (Tex. 2020) (eff. Oct. 1. 2020).[7] Subsequent orders which took effect during the pendency of the case contained substantially identical provisions. *See Twenty-Ninth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 863, 863–64 (Tex. 2020) (eff. Nov. 11, 2020); *Thirty-Third Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 179, 179–180 (Tex. 2021) (eff. Jan. 14, 2021). As of March 5, 2021, courts were no longer prohibited from conducting in-person proceedings contrary to the guidance issued by the Office of Court Administration. *See Thirty-Sixth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 897, 897–98 (Tex. 2021) (eff. Mar. 5, 2021); *Thirty-Eighth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 900, 900 (Tex. 2021) (eff. May 26, 2021); *Forty-Third Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 929, 929 (Tex. 2021) (eff. Oct. 1, 2021).

The emergency pandemic orders were intended to mitigate the health risk presented by COVID-19 to litigants and court personnel, in part by giving courts wide discretion to conduct remote proceedings in nearly all circumstances. They do not generate a blanket excuse which can be used to extend deadlines indefinitely, especially in the absence of any specific explanation for why such extensions are warranted. Moreover, the emergency orders are not self-executing; they permit courts to extend

---

[7] The State's representation, made in its response to C.C.C.'s motion to dismiss, that "Texas Courts must . . . 'modify or suspend any and all deadlines and procedures . . .' until further notice" (ellipses in original) is grossly overbroad and misleading.

deadlines, and they require extensions in certain instances, but they do not extend deadlines themselves. Here, there is nothing in the record indicating that any hearing or other proceeding in C.C.C.'s case was ever postponed or continued due to the pandemic conditions or any provision of any emergency order. The juvenile court's finding to the contrary is supported by no evidence.[8]

We agree with C.C.C. that the only reason why the transfer hearing could not proceed on April 14, 2021, was because C.C.C. was not timely served with the summons and amended petition. C.C.C.'s counsel had no legal authority to waive timely service on his behalf. *See* TEX. FAM. CODE ANN. § 53.06(e). The prosecutor and juvenile court represented that it was the long-term common practice of the court to serve a juvenile respondent with the summons at the courthouse on the day the juvenile first appears. But such practice risks violating the Juvenile Justice Code, which generally requires that the summons be served "at least two days before the day of the . . . hearing." *See id.* § 53.07 ("If a person to be served with a summons is in this state and can be found, the summons shall be served upon him personally at least two days before the day of the adjudication hearing."); *id.* § 54.02(k) (noting that "[t]he petition and notice requirements of [§§] 53.04, 53.05, 53.06, and 53.07 of this code must be satisfied" with respect to a petition for discretionary transfer under § 54.02(j)).

Crucially, while the State cannot be faulted for the delay caused by C.C.C.'s counsel's conflict in federal court on May 5, the same cannot be said for the delay between May 12, the reset date suggested by the court administrator, and June 9, the

---

[8] In its brief on appeal, the State does not direct us to any order "saying that no extraordinary business could be conducted unless it was pertinent to justice," as the prosecutor claimed at the transfer hearing; nor does it direct us to any order providing that "no hearings could be held unless they were emergency hearings," as the juvenile court claimed at that hearing.

date the State proposed instead. Had the State acquiesced to the May 12 reset date, the hearing would have taken place before C.C.C.'s eighteenth birthday.[9] The State did not offer to the juvenile court and does not offer on appeal any reason for why the transfer hearing could not have gone forward on May 12.

The State contends that it "is not responsible for court delays or delays caused by court appointed private actors." *See In re J.C.W.G.*, 613 S.W.3d at 567 (citing *Lloyd v. State*, 665 S.W.2d 472, 475 (Tex. Crim. App. [Panel Op.] 1984)) ("The State is not responsible for court delays, which can be described as exceptional circumstances."). But for purposes of the analysis, "the state" includes "law enforcement and the prosecution." *Moore v. State*, 532 S.W.3d 400, 403–04 (Tex. Crim. App. 2017). Here, the delays are not attributable to the court or private actors. As C.C.C. notes, despite the emergency orders and pandemic conditions, the State was able to send investigators to conduct its investigation, obtain an arrest warrant and detain C.C.C., conduct a detention hearing, file its petitions for transfer, obtain an order for the issuance of summons, obtain orders for psychological and sociological studies, provide probation services, and obtain a hearing date prior to C.C.C.'s eighteenth birthday. There is no evidence in the record establishing that timely service of the summons for the transfer hearing could not have been accomplished before C.C.C.'s eighteenth birthday, for reasons related to the pandemic or the emergency orders, or for any other reason beyond the control of the State.

In this case, C.C.C. was arrested on October 23, 2020, and released after a

---

[9] C.C.C.'s counsel had a conflict in federal court on May 5 but did not object to the court administrator's suggestion of May 12.

detention hearing on October 26, 2020—i.e., 205 days before C.C.C.'s eighteenth birthday. At the detention hearing, the prosecutor stated that "[w]e have received all of the evidence." This was corroborated by Hernandez's uncontroverted testimony at the transfer hearing, in which she stated that she was able to charge C.C.C. with a crime based "only" on the facts and evidence gathered at the scene of the accident, which took place 415 days before C.C.C. turned eighteen. Further, Armijo gave uncontroverted testimony that C.C.C. reported to her weekly throughout the pendency of the case.[10]

In light of the foregoing, we conclude the juvenile court abused its discretion in finding, by a preponderance of the evidence, that "for a reason beyond the control of the state, it was not practicable to proceed in juvenile court before [C.C.C.]'s 18th birthday." *See id.* § 53.02(j)(4)(A). Therefore, the court erred in granting the State's motion to transfer. We sustain C.C.C.'s first issue.[11]

### D. Due Diligence

As noted, under family code § 51.0412, the juvenile court may retain jurisdiction over a person over eighteen under certain conditions, notwithstanding the State's failure to prove grounds for transfer under § 54.02.[12] *See id.* § 51.0412; *Moore*, 532 S.W.3d at

---

[10] Armijo recommended in her report that the juvenile court waive its jurisdiction and transfer the case, but the reasons she gave for that recommendation—including C.C.C.'s "maturity and sophistication," the "prospects of adequate protection of the public," and the "lack of rehabilitation services available to the juvenile court"—are not relevant under § 54.02(j).

[11] In light of this conclusion, we need not address C.C.C.'s third issue concerning probable cause. *See* TEX. R. APP. P. 47.1.

[12] The parties brief § 51.0412 within their arguments concerning the petition for discretionary transfer. But, though § 51.0412(e) requires a showing of due diligence, it does not concern the elements necessary to obtain transfer under § 54.02. Instead, it concerns what the juvenile court must do should it *not* transfer the case (i.e., if § 51.0412 is not satisfied, then the court must dismiss the case, but if it is satisfied, then the court retains jurisdiction). The State does not ask us, in the event we find the court erred in granting the motion to transfer, to remand for further proceedings in light of § 51.0412. *See* TEX. FAM. CODE ANN. § 51.0412; *see also Powell v. State*, No. 05-07-01078-CR, 2009 WL 866194, at *3 (Tex. App.— Dallas Apr. 1, 2009, pet. ref'd) (mem. op., not designated for publication) (finding the juvenile court erred

23

405 n.4 (characterizing § 51.0412 as an "exception" to the general rule that a juvenile court's jurisdiction over a person over eighteen is limited to dismissal or transfer). Here, the transfer petition was filed before C.C.C.'s eighteenth birthday, the proceeding was not completed by that date, and the juvenile court orally found that the State exercised "due diligence in handling this case."[13] Thus, so long as the juvenile court's finding of due diligence is supported by the record, then it will retain jurisdiction over C.C.C. *See* TEX. FAM. CODE ANN. § 51.0412; *In re J.C.W.G.*, 613 S.W.3d 560, 566 (Tex. App.—San Antonio 2020, no pet.); *In re B.R.H.*, 426 S.W.3d at 166–67; *see also Moore*, 532 S.W.3d at 405 n.4.

We have already concluded that the juvenile court erred in finding that it was not practicable to proceed before C.C.C.'s eighteenth birthday for reasons beyond the State's control. For the same reasons, we conclude the court erred in finding that "the prosecuting attorney exercised due diligence in an attempt to complete the proceeding before [C.C.C.] became 18 . . . years of age." *See* TEX. FAM. CODE ANN. § 51.0412(3). "Due diligence" is not defined by statute but commonly means "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." *Collins*, 516 S.W.3d at 520 (citing BLACK'S LAW DICTIONARY 523 (9th ed. 2009)); *see* TEX. GOV'T CODE ANN. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). As noted, there is no indication in the record that it was impracticable for C.C.C. to be

---

by transferring to criminal court under § 54.02, but remanding for further proceedings). We address the issue out of an abundance of caution and in our sole discretion.

[13] The juvenile court made this finding when it ruled on C.C.C.'s motion to dismiss, which did not concern the retention of jurisdiction under § 51.0412. The written judgment does not contain a due diligence finding. We assume but do not decide, for purposes of this analysis, that the oral finding invoked retention of jurisdiction under § 51.0412(3).

timely served before the April 14, 2021 hearing, or that it was impracticable for the transfer hearing to have taken place on May 12, 2021, as suggested by the court administrator. Further, the evidence at the transfer hearing was uncontroverted that the State's investigation into the March 30, 2020 accident was complete as of the time C.C.C. was arrested, in October of that year.

We conclude that the trial court's finding that the State "did do due diligence in handling this case" was supported by legally insufficient evidence. *See In re A.M.*, 577 S.W.3d at 658. Accordingly, in light of our conclusion above, the juvenile court was obligated to dismiss the case. *See In re B.R.H.*, 426 S.W.3d at 166.

### III.    CONCLUSION

The juvenile court's judgment is reversed, and we render judgment dismissing the case.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
10th day of March, 2022.